n-c41



**THE ATTORNEY GENERAL**

**OF TEXAS**

**AUSTIN 11, TEXAS**

PRICE DANIEL
ATTORNEY GENERAL

April 28, 1947

Hon. D. D. Williams
County Attorney
Throckmorton County
Throckmorton, Texas

Opinion No. V-166

Re:  (1)  Can penalty and interest
be collected on the taxes
on land which has not
been assessed or rendered
for taxation when placed
on the tax rolls in
accordance with Article
7207 of V.C.S. of Texas

(2)  Taxability of corporate
stock in the hands of
residents of this State.

Dear Mr. Williams:

You submit for the opinion of this Department two ques-
tions stated in your letter, which we answer in the order stated.
Your letter follows:

"1. Can penalty and interest be collected
on the taxes on land which has not been assessed
or rendered for taxation when placed on the tax
rolls in accordance with Article 7207 of the
R.C.S. of Texas, 1925?

"PARTICULAR FACT SITUATION: There are
several tracts of land located in Throckmorton
County, Texas, which have been carried on the
rolls for many years. If, for example, the
assessor assesses a tract of such land for the
year 1940, should penalty and interest be collected
on the taxes as though the tract of land had been
placed on the rolls in the year 1940 and carried
as being delinquent since that time?

"2. Should the stock in the West Texas
Utilities Co. and other corporations owned by the
citizens of this county be rendered and assessed
for taxation in this county for State and County
and School purposes?"

Before answering specifically your first question, we should determine to what extent, if any, Articles 7207, 7346 and 7347 are modified by S.B. 407, Ch. 128, Acts of the 44th Legislature, page 355, and codified as Article 7336f, V.C.S.  In answering your questions we must consider not only Article 7207 but also Articles 7346, 7347 and 7348 as we shall explain later. Article 7336f reads in part as follows:

"Section 1.  The collection of all delinquent, ad valorem taxes due the State, County, Municipality or other defined Subdivision that were delinquent prior to December 31st, 1919, is forever barred."

We think the Legislature in the enactment of said S. B. No. 407 (Article 7336f, V.C.S.) meant to accomplish more than merely the passage of a limitation statute against the collection of delinquent taxes, but declared the public policy of the State to be that no taxes were to be assessed and collected by the State, county, municipality, or other defined subdivisions of the State, if such taxes were delinquent prior to December 31, 1919. This is manifest by a careful reading of the entire act, including the caption and emergency clause, for the caption merely says, "An Act limiting the time within which ad valorem taxes may be collected by the State, any county, municipality, or other defined subdivision of the State"; in the emergency clause we find, "the fact that the people have already passed a constitutional amendment giving the Legislature the right to remit taxes that were delinquent for a period of ten years or more; and the fact that to remit taxes prior to December 31, 1919, would clarify the record and remove a cloud from the title of property in this State creates an emergency", etc.

In other words, we think the manifest intention of the Legislature in the passage of this act, and we so hold, was to "wipe the slate clean" of all back taxes, whether upon the assessment rolls or not, that were delinquent prior to December 31, 1919.  To the extent that this opinion conflicts with the prior opinions of this department, numbered O-2083 and O-7278, they are expressly overruled.  With this collateral matter out of the way, we proceed to answer your first question.

We quote below the parts of Articles 7207, 7346, 7347 and 7348, necessary to be considered in answering your question.  These Articles provide:

"Article 7207, V. C. S.

"If the assessor of taxes shall discover in his county any real property which has not been assessed or rendered for taxation for any year

since 1870, he shall list and assess the same for
each year for which it has not been assessed, in
the manner prescribed in the preceding article;
and such assessment shall be as valid and binding
as though it had been rendered by the owner thereof;
. . . . . "

"Article 7346, V.C.S.

"Whenever any commissioners court shall
discover through notice from the tax collector or
otherwise that any real property has been omitted
from the tax rolls for any year or years since
1884, . . . . they may, at any meeting of the
court, order a list of such properties to be made
in triplicate and fix a compensation therefor; the
said list to show a complete description of such
properties and for what years such properties were
omitted from the tax rolls, . . . "

"Article 7347, V.C.S.

"When said list has been so made up the com-
missioners court may, at any meeting, order a
cancellation of such properties in said list that
are shown to have been previously assessed, but
which assessments are found to be invalid and have
not been canceled by any former order of the com-
missioners court, or by decree of any district court;
and shall then refer such list of properties to be
assessed or re-assessed to the tax assessor who shall
proceed at once to make an assessment of all said
properties, from the data given by said list ( the
certificate of the Comptroller as to assessments or
re-assessments made by the tax assessor shall not be
necessary as required under Article 7207, but he
shall furnish all blank forms needed, that uniformity
may be had in all counties), and when completed
shall submit the same to the commissioners court,
who shall pass upon the valuations fixed by him; and,
when approved as to the values, shall cause the taxes
to be computed and extended at the tax rate in effect
for each separate year mentioned in said list; and,
in addition thereto, shall cause to be added a
penalty equal in amount to what would be six per cent
interest to the date of making said list from the
date such properties would have been delinquent had
same been properly rendered by the owner thereof
at the time and for the years stated in said list;
. . . . . "

"Article 7348, V.C.S.

"The said list, when complete in all respects, and filed with the tax collector, shall constitute a valid lien against all the properties mentioned in said list for the full amount of taxes, penalties, officers costs, advertising and six per cent interest from the date of said list to the date of the payment of the full sum due on each separate piece of property. A copy of said list and all cancellation orders shall be furnished to the Comptroller, and a copy filed with the county clerk."

We shall consider these articles in the order stated above. Article 7207 was enacted in 1888, (Acts 1888, page 4; G.L. Vol. 9, p. 1002) and at this time and several years thereafter penalties and interest upon delinquent taxes were not imposed. It is observed that no provision is made in said article for penalties and interest upon the taxes assessed by virtue thereof. It does nothing more than to impose a duty upon the assessor, if he discovers in his county any real property which has not been assessed or rendered for taxation for any year since 1870, to "list and assess the same for each year for which it has not been assessed". As modified by what we have said above said article should now in effect read since 1918 instead of 1870.

In 1905 the Legislature enacted Articles 7346, 7347 and 7348 (Acts 1905, page 318) at which time penalties and interest had theretofore been imposed by the Legislature upon delinquent taxes for several years. Article 7346, provides substantially as does Article 7207 for the assessment of property omitted from the tax rolls for any year or years since 1884, (should now be since 1918) but goes further and provides a comprehensive method of assessing and collecting such taxes upon such omitted property. Article 7347 and 7348, a part of the same act, specifies the penalty or interest that should be collected upon such taxes. This is the first time the Legislature in definite terms gives the penalty and interest applicable to taxes assessed and collected upon property theretofore omitted from the tax rolls. We are governed by these statutes as to the penalty and interest that should be collected, regardless of whether the assessment of such omitted property arises under Article 7207 or 7346. These two articles are in pari materia and should be construed together. The Legislature did not expressly, or by implication, repeal Article 7207 in the enactment of Articles 7346 and 7347. Indeed, a reading of Article 7347 discloses that the Legislature intended for Article 7207 to continue in effect for the purposes for which it was originally enacted and to continue in effect the duties imposed upon the Tax Assessor to put omitted property upon the tax rolls and assess it when he discovers it has been omitted. We look

to Articles 7346, 7347 and 7348, the later act, to find the penalty and interest that should be imposed in such instance.

In our opinion it is not material from what source comes the information that property has been omitted from the tax rolls and has been escaping taxation; the important thing is that it get on the rolls, be assessed, and begin to bear its just portion of the tax burden. Whether the omission is discovered by the Tax Assessor as provided in Article 7207, or the tax collector as provided in 7346, the duty remains the same, to proceed in the statutory manner to subject such omitted property to taxation. It is observed that Article 7346 provides that the Commissioners' Court shall "Order a list of such property to be made in triplicate and fix a compensation therefor; the said list to show a complete list of such property and for what year such property was omitted from the tax rolls". Article 7347 provides "When the said list has been so made up the Commissioners' Court may, at any meeting, . . . and shall then refer such list of property to be assessed or reassessed to the Tax Assessor who shall proceed at once to make an assessment of all said property and when completed shall submit the same to the Commissioners' Court who shall pass upon the valuation fixed by him; and when approved as to the value shall cause the taxes to be computed and extended at the rate in effect each separate year mentioned in said list." Article 7348 provides that said list, when completed in all respects and filed with the tax collector, shall constitute a valid lien against all of the property mentioned in said list for the full amount of the taxes, penalties, officers costs, and advertising.

Article 7347 and 7348 state specifically and separately the penalty and interest to be imposed upon taxes that are found owing upon such omitted property. After the taxes have been computed for the respective years as shown upon the list there is added thereto a "penalty equal in the amount to what would be six per cent interest at the date of making said list from the date such properties would have been delinquent had same been properly rendered by the owner thereof at the time and for the years stated in said list." (Emphasis added) Said Article 7348 provides 6% interest from the date of said list to the date of payment for the full amount due on each separate piece of property. It is observed that the 6% is called a penalty when first calculated from the date such properties would have been delinquent to the date of making said list and in Article 7348 it calls the 6% interest. It makes no difference whether we call this 6% a penalty or interest, it is the same, and in effect is calculated from the date the property would have become delinquent had it been rendered by the owner to the date of payment. This calculation in either event is on an annual basis. We have no doubt that Articles 7347 and 7348 are the governing statutes in determining the penalty and interest that should be collected by the Tax Collector upon taxes assessed upon

omitted property.  We think the case of Electra Independent School District vs. W.T. Waggoner Estate, Supreme Court of Texas, 168 S.W. (2d) 645, confirms our view, and from this case we quote:

> ". . . The legislature has provided a procedure for the reassessment of property for taxation where property has been for any reason omitted from the tax rolls, or where assessments have been found to be invalid.  Chapter 11, Title 122 of the Revised Civil Statutes of Texas, Article 7346 et seq. . . ."

It would serve no useful purpose for us to enter upon an academic discussion of why the penalties and interest imposed by Articles 7347 and 7348 might in some instances impose a lesser burden upon the taxpayer where his property had been omitted from the rolls and assessed by virtue of Article 7207 or 7346 than would be imposed upon a delinquent taxpayer who might have regularly rendered his property for taxation but had refused or neglected to pay his taxes within the time prescribed by statute, whereby his taxes had become delinquent, as this is a matter vested solely in the Legislature.  Conceivably the Legislature may have thought that the omission of property from the tax rolls may have resulted from negligence upon the part of the taxing officials as well as neglect upon the part of the property owner, and imposed penalties and interest it thought commensurate to meet the problem dealt with.

All that we have said above, applicable to State and County taxes, applies with equal force to common school districts' taxes which, by virtue of Article 2795, V.C.S., are required to be listed, assessed, and collected by the County officials.  A ten year statute of limitations applies to school taxes.

You are, therefore, advised that it is our opinion that taxes assessed upon omitted property, such as comprehended under Articles 7207 and 7346, bear 6% penalty or interest, calculated upon an annual basis, from the date such property would have become delinquent if rendered by the owner, to the date of payment, together with such officer's cost and cost of advertising, if such costs have been incurred.

We pass to your second question, which for convenience we restate as follows:

> "2.  Should the stock in the West Texas Utilities Co. and other corporations owned by the Citizens of this county be rendered and assessed for taxation in this county for State and County and School purposes?"

In answering this question, we should note certain

statutory provisions, which, for clarity, we state as follows:

"Article 7147, V. C. S.

"Personal property, for the purposes of taxation, shall be construed to include . . . . . all stock in . . . other corporations (except national banks) out of the State, owned by inhabitants of this State; . . . ."

"Article 7161, V. C. S.

"Each person required by law to list property shall make and sign a statement, verified by his oath, as required by law, of all property, both real and personal, in his possession, or under his control and which he is required to list for taxation, either as owner or holder thereof, or as guardian, parent, husband, trustee, executor, administrator, receiver, accounting officer, partner, agent or factor."

"Article 7162, V. C. S.

". . . Such statement shall truly and distinctly set forth: . . . . .

"38. Amount and value of shares of capital stock, companies and associations not incorporated by the laws of this State.

"39. Value of property of companies and corporations other than property hereinbefore enumerated."

"Article 7163, V. C. S.

"No person shall be required to list or render or to include in his statement as a part of his personal property, which is required to be listed any share or portion of the capital stock or property of any company or corporation which is required to list or return its capital and property for taxation."

We answer this question with a statement from 11 Texas Jurisprudence, page 219.

"Under the Texas scheme of taxation, the property of a corporation is taxed only to the corporation; the stockholders are not separately assessed upon their stock. Indeed, there is express provision that, in

rendering a return of his personal property for taxation, no person is required to include in his statement any share or portion of the capital stock or property of any corporation which is required to return its capital and property for taxation; and under this article stock is not taxable to the stockholder even where the company has not returned its property for taxation in accordance with law.

". . . Under the statute law of Texas, stock in foreign corporations owned by inhabitants of Texas is expressly included in the definition of 'personal property.' The validity of such taxes has been upheld as against constitutional objections."

Conceivably the provisions of Article 7163 may rest upon the well-recognized principle of law that a stockholder is not the owner of the property owned by a corporation in which he owns shares of stock. Instead, a stockholder merely possesses, in common with all other stockholders, an interest evidenced by shares of stock which authorizes him, through selected officers and directors, to participate in corporate management, and receive dividends when declared, and to demand his pro rata share of corporate assets upon dissolution of the corporation.

Stock of State and National banks are partially excepted from the provisions of Article 7163, for by special provisions, banks pay upon the real estate owned by them, but not upon their personal property. This, in effect, results in taxes against the stockholders upon the stock owned by them, the value of which is reduced by the factor of the real estate which the banks themselves render and pay upon.

We hold that stock in domestic corporations, owned by residents of this State, is not subject to ad valorem taxes, but stock in foreign corporations, owned by residents of this State, is subject to ad valorem taxes.

We believe we have answered your question without the necessity of stating categorically whether or not the capital stock of any particular corporation would be subject to ad valorem taxes as personal property in the hands of the owner.

## SUMMARY

1. Property omitted from the tax poll and assessed by the virtue of Articles 7207 and 7346, V.C.S., for all years since 1918 is subject to 6% penalty or interest, calculated annually, from the date such property would have become delinquent if

rendered by the owner to the date of payment. Electra Independent School District (Supreme Court) 168 S.W. (2) 645.

2. Stock of domestic corporations owned by residents of this State is not subject to ad valorem taxes in the hands of the owner, but stock of foreign corporations owned by residents of this State is subject to ad valorem taxes in the hands of the owner.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/ L. P. Lollar
L. P. Lollar
Assistant

APPROVED APR. 28, 1947
s/ Price Daniel
ATTORNEY GENERAL

LPL:mmc:jrb:wc